STATE OF CONNECTICUT *v.* MARIO AQUINO
(AC 24431)

Lavery, C. J., and DiPentima and McLachlan, Js.

Argued February 14—officially released June 7, 2005

*Conrad Ost Seifert,* special public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Michael A. Pepper,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Mario Aquino, appeals from the judgment of the trial court rendered following the denial of his motion to withdraw his guilty plea, entered pursuant to the *Alford* doctrine,[1] to one count of attempt to commit assault in the second degree in violation of General Statutes §§ 53a-60 (a) (1) and 53a-

---

[1] "Under *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished *as if he were guilty* to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Emphasis in original; internal quotation marks omitted.) *State* v. *Faraday,* 268 Conn. 174, 204–205, 842 A.2d 567 (2004).

49 (a) (2), and one count of failure to appear in the first degree in violation of General Statutes § 53a-172. On appeal, the defendant claims that the plea was not knowingly and voluntarily made due to ineffective assistance of counsel. We affirm the judgment of the trial court.

The defendant is a Guatemalan national who illegally entered the United States in 1986 and remained here as an illegal alien for the next seventeen years. At a plea hearing before the court on February 20, 2003, the state offered the following factual basis for the defendant's plea: "In the city of New Haven back on April 7, 1989, around 4:50 p.m., police officers were called to 183 Fulton Street. That is the condominium address of the victim . . . . Frank Rogers. [The victim] at the time was involved in the construction trade, and approximately six months prior to that date, he had taken in the defendant, who had no home and no work. He had employed the defendant and allowed him to live at his condominium. He was paying the defendant for the work he was doing and, on that date, [the victim] had expressed to the defendant, who was apparently an immigrant from Guatemala, that [he] wished for him to vacate the premises. The defendant didn't take well to that request, approached the victim with what turned out to be a handgun and threatened the victim. He fired one shot at the victim, missing the victim. The victim was able to grab onto the defendant. They struggled over the gun. Another shot was fired into the ceiling of the premises. They fell down some stairs, and, eventually, the defendant made off without the gun. The gun was recovered at the scene. Shortly thereafter, the defendant was apprehended by New Haven police department officials. I believe it was in the vicinity of Interstate 95 and Stiles Avenue, and [he] was positively identified by the victim as the person who tried to shoot him. Subsequently, the defendant was booked at the

police department, and the bail commissioner saw fit to give him a promise to appear with a court date in [Superior Court, geographical area number six] of April 25, 1989, as his first court appearance. He signed . . . the promise to appear form with that date. On April 25, 1989, in [geographical area number six] the defendant failed to appear. That failure to appear was wilful, and the court, at that time, ordered a rearrest, and a failure to appear warrant went out. In 2002, the New Haven police department got word from Orange County, New York, that the officials there had [the defendant] in custody, and he was subsequently extradited here to New Haven to answer to the original charges, the felony charges [that] he had been arrested for back in 1989."

After these facts were recited at the plea hearing, the court conducted a plea canvass, advising the defendant, who was represented by an attorney, of his constitutional rights, of the factual basis of the state's case against him and of the maximum sentence that might be imposed. With reference to the plea arrangement, the court inquired whether the defendant had been coerced in any fashion, either by threats or promises, to which the defendant answered in the negative. The defendant also acknowledged that he had consulted with his attorney before he had entered his plea and that he was satisfied with the advice that he had received from his attorney.

In addition, the court inquired: "Do you understand [that] if you are not a citizen of the United States, conviction of the offenses with which you are charged could result in deportation, exclusion from admission into the United States or denial of naturalization rights pursuant to the laws of the federal government. Do you understand that?" The defendant answered in the affirmative, declaring, "Yes sir. I understand clear." The court thereupon found that the defendant's plea of guilty had been "voluntarily and understandingly made with the assis-

tance of competent counsel," and continued the matter for sentencing.

On April 4, 2003, the defendant filed a motion to withdraw his plea. The motion alleged that, at the time the plea was entered, the defendant "did not have a clear understanding of the likelihood that by entering into the plea bargain proposed, he would be jeopardizing his continuing ability to reside in the United States and his ability to petition for naturalization." In response, the court conducted an evidentiary hearing and thereafter denied the defendant's motion. The defendant was then sentenced in accordance with the terms of his plea. This appeal followed.

I

Although the parties did not raise the issue of mootness in this appeal, we do so sua sponte because mootness implicates the court's subject matter jurisdiction and is, therefore, a threshold matter to resolve. *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996). "The doctrine of mootness is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. . . . [T]he standing doctrine is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted; internal quotation marks

omitted.) *State* v. *McElveen*, 261 Conn. 198, 204, 802 A.2d 74 (2002).

The record reveals that the defendant was deported on February 6, 2004. The defendant's appellate brief states that "[t]he General Counsel of the Guatemalan Embassy to the United States has agreed to accept a copy of this brief in trust for [the defendant], *pending locating him*." (Emphasis added.) As a result, there is little practical relief that we can afford. His appeal, thus, appears to be moot.

Our Supreme Court, however, has stated that "a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief. . . . [A] common theme emerges upon review of [our case law]: whether the litigant demonstrated a basis upon which [the reviewing court] could conclude that, under the circumstances, prejudicial collateral consequences are reasonably possible as a result of the alleged impropriety challenged on the appeal." *State* v. *McElveen*, supra, 261 Conn. 205. "[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. . . . The reviewing court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." Id., 208. "[T]his standard requires the [litigant] to demonstrate more than an abstract, purely speculative injury, but does not require the [litigant] to prove that it is more probable than not that the prejudicial consequences will occur."

*Williams* v. *Ragaglia,* 261 Conn. 219, 227, 802 A.2d 778 (2002).

The defendant argues that, as a collateral consequence of the denial of his motion to withdraw his plea, his ability to petition for naturalization will be gravely impaired.[2] That contention is not mere speculation, but rather is a likely consequence of his guilty plea to the count of attempt to commit assault in the second degree. For that reason, we conclude that subject matter jurisdiction is not a bar to the defendant's present appeal.

II

The defendant claims that because his plea was not knowingly and voluntarily made due to the ineffective assistance of counsel, the court abused its discretion in denying his motion to withdraw the plea. We disagree.

It is well settled that "[a] guilty plea, once accepted, may be withdrawn only with the permission of the court. . . . The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § 721 [now § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused."[3] (Citations omitted.) *State* v. *Morant,* 20 Conn.

---

[2] The defendant has two daughters born and residing in the United States.

[3] Practice Book § 39-27 provides: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

App. 630, 633, 569 A.2d 1140, cert. denied, 215 Conn. 818, 576 A.2d 547 (1990).

A defendant claiming that a plea resulted from ineffective assistance of counsel bears a dual burden. "First, [the defendant] must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the . . . plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. . . . [T]he question of [w]hether the representation a defendant received . . . was constitutionally inadequate is a mixed question of law and fact [that] requires plenary review by this court unfettered by the clearly erroneous standard. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Additionally, in reviewing this claim, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . In accordance with this principle, we recognize also that the right to effective assistance is not the right to perfect representation." (Citations omitted; internal quotation marks omitted.) *State* v. *Irala*, 68 Conn. App. 499, 525–26, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002).

The crux of the defendant's contention is that his counsel was obligated to inform him of the certainty of his deportation and not merely the possibility of

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

deportation. The failure to do so, the defendant alleges, constitutes ineffective assistance of counsel.

A

We begin by noting the law governing guilty pleas. "It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. . . . We therefore require the record affirmatively to disclose that the defendant's choice was made intelligently and voluntarily." (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews*, 253 Conn. 497, 502–503, 752 A.2d 49 (2000). A defendant need only be made aware of the direct consequences of his plea for it to be valid. *Brady* v. *United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Our Supreme Court has explained that "[a]lthough a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only [those enumerated in Practice Book § 39-19 (2), (3) and (4)]. The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews*, supra, 504–505.

The defendant's entire appeal is premised on the immigration consequences of his guilty plea. To prevail,

he must establish that such consequences are direct, rather than collateral. Yet, under Connecticut law, "[t]he impact of a plea's immigration consequences on a defendant, while potentially great, is not of constitutional magnitude and cannot transform this collateral consequence into a direct consequence of the plea."[4] (Internal quotation marks omitted.) *State* v. *Irala*, supra, 68 Conn. App. 520.

Likewise, our federal courts consistently have held that deportation is a collateral consequence. For example, in *El-Nobani* v. *United States*, 287 F.3d 417, 419 (6th Cir. 2002), the petitioner claimed that his lack of awareness of the deportation consequences rendered his plea involuntary and unknowing. The United States Court of Appeals for the Sixth Circuit disagreed: "A defendant need only be aware of the direct consequences of the plea . . . . A collateral consequence is one that remains beyond the control and responsibility of the district court in which that conviction was entered. . . . [I]t is clear that deportation is not within the control and responsibility of the district court, and hence, deportation is collateral to a conviction. . . . Thus, the fact that petitioner was unaware of the deportation consequences of his pleas does not make his pleas unknowing or involuntary." (Citations omitted; internal quotation marks omitted.) Id., 421; see also *United States* v. *Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003) ("we have held that deportation is a collateral, not direct, consequence of the criminal process"); *United States* v. *Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) ("we hold that potential deportation is a collateral consequence of a guilty plea"); *United States* v. *Quin*, 836 F.2d 654, 655 (1st Cir. 1988) (deportation generally regarded as collateral consequence); *United States* v. *Campbell*, 778 F.2d 764, 767 (11th Cir. 1985) ("deportation is a collateral consequence of a guilty plea");

---

[4] Practice Book § 39-19 is silent as to immigration consequences.

*United States* v. *Russell*, 686 F.2d 35, 39 (D.C. Cir. 1982) (well settled that rule 11 of Federal Rules of Criminal Procedure does not require informing defendant of possibility of deportation); *Fruchtman* v. *Kenton*, 531 F.2d 946, 948–49 (9th Cir.) (deportation is collateral consequence), cert. denied, 429 U.S. 895, 97 S. Ct. 256, 50 L. Ed. 2d 178 (1976); *Michel* v. *United States*, 507 F.2d 461, 466 (2d Cir. 1974) (same).

The record reveals that the defendant in the present case was canvassed thoroughly as to the immigration consequences of his plea, in accordance with General Statutes (Rev. to 2003) § 54-1j.[5] The court twice specifically inquired: "Do you understand [that] if you are not a citizen of the United States, conviction of the offenses with which you are charged could result in deportation, exclusion from admission into the United States or denial of naturalization rights pursuant to the laws of the federal government. Do you understand that?" The defendant answered in the affirmative, declaring, "Yes sir. I understand clear." The defendant also was asked if he had had enough time to discuss his plea with his attorney, and whether he was satisfied with his attorney's advice and counsel; he answered "yes" to both questions. At the hearing on his motion to withdraw his plea, the defendant acknowledged that his attorney had advised him that deportation was a possible consequence of his plea.

In light of the foregoing, we conclude that the record affirmatively discloses that the defendant was advised of the possible collateral immigration consequences of his plea.

---

[5] General Statutes (Rev. to 2003) § 54-1j (a) provides in relevant part: "The court shall not accept a plea of guilty . . . from any defendant in any criminal proceeding unless the court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.' "

## B

The defendant nevertheless contends that the failure of his counsel to advise him that deportation will follow from a guilty plea constitutes ineffective assistance of counsel. This claim, while not novel, presents an issue of first impression in Connecticut.

To establish ineffective assistance, a defendant must first "prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . ." (Internal quotation marks omitted.) *State* v. *Irala*, supra, 68 Conn. App. 525. "While the Sixth Amendment assures an accused of effective assistance of counsel in '*criminal prosecutions*,' this assurance does not extend to collateral aspects of the prosecution."[6] (Emphasis in original.) *United States* v. *George*, 869 F.2d 333, 337 (7th Cir. 1989). This court has held that a claim of ineffective assistance of counsel "because counsel did not inform [the defendant] of the collateral consequences of his pleas . . . does not constitute a basis for withdrawal of the plea under § 721 (4) [now § 39-27 (4)]." *State* v. *Rish*, 17 Conn. App. 447, 455–56, 553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493 U.S. 818, 110 S. Ct. 72, 107 L. Ed. 2d 38 (1989). As we have noted, in Connecticut, immigration consequences

---

[6] The rationale underlying that precept was succinctly stated in *State* v. *Ginebra*, 511 So. 2d 960, 961–62 (Fla. 1987): "The focus of whether counsel provided constitutionally effective assistance in the context of a [guilty] plea is whether counsel provided his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. . . . A defendant's lack of knowledge that a plea of guilty may lead to deportation does nothing to undermine the plea itself which is, in effect, a confession in open court as to the facts alleged." (Citation omitted; internal quotation marks omitted.) Indeed, in *Strickland* v. *Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court stated that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . ."

are collateral consequences of a guilty plea.[7] Accordingly, the failure to advise as to that collateral consequence does not constitute deficient assistance.[8]

In this case, it is undisputed that counsel for the defendant informed the defendant of the possibility of deportation due to his guilty plea. The defendant was represented by a public defender, whose mandate was to provide representation in the criminal matter, not a potential deportation proceeding. "A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding."[9] *United States* v. *George*, supra, 869 F.2d 337. Counsel's obligation, therefore, was to apprise the defendant of the direct consequences of his conviction. We iterate the observation of the Appellate Division of the New Jersey Superior Court, which stated that a defendant, "who surely was aware of his illegal immigrant status, was also aware of possible immigration problems. [He] should have sought advice from competent immigration counsel." *State* v. *Chung*, 210 N.J. Super. 427, 435, 510 A.2d 72 (App. Div. 1986). Although the sixth amendment requires assistance

---

[7] We note that there are a myriad of other collateral consequences of which a defendant does not have to be knowledgeable before a plea is considered knowing and voluntary, including loss of the right to vote; *United States* v. *Cariola*, 323 F.2d 180, 182 (3d Cir. 1963); loss of the right to travel freely abroad; *Meaton* v. *United States*, 328 F.2d 379, 380–81 (5th Cir. 1964), cert. denied, 380 U.S. 916, 85 S. Ct. 902, 13 L. Ed. 2d 801 (1965); loss of civil service employment; *United States* v. *Crowley*, 529 F.2d 1066, 1072 (3d Cir.), cert. denied, 425 U.S. 995, 96 S. Ct. 2209, 48 L. Ed. 2d 820 (1976); and loss of the right to a driver's license; *Moore* v. *Hinton*, 513 F.2d 781, 782 (5th Cir. 1975).

[8] "Defense counsel has done all he must under the Constitution when he advises his client of the direct consequences of a guilty plea." *United States* v. *Banda*, 1 F.3d 354, 356 (5th Cir. 1993).

[9] As the Massachusetts Appeals Court recently stated: "[I]t is not the indeterminate nature of immigration consequences that makes them collateral in nature; it is the fact that such consequences are handed down by a body entirely separate from the court that accepts the guilty plea." *Commonwealth* v. *Fraire*, 55 Mass. App. 916, 918, 774 N.E.2d 677 (2002).

within the range of competence displayed by lawyers with ordinary training and skill in criminal law, to require immigration expertise is to place an unreasonable burden on defense counsel. See *United States* v. *Yearwood*, 863 F.2d 6, 8 (4th Cir. 1988).

Even if we presume that there was a deficiency in counsel's representation, the defendant has not established the requisite prejudice. In cases in which the conviction has resulted from a guilty plea, a defendant must "demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 151, 662 A.2d 718 (1995).

The defendant raised no possible defense to the underlying charges in either his motion to withdraw the plea or in the hearing on that motion and has said nothing to repudiate his admission of guilt. See, e.g., *United States* v. *Gonzalez*, 202 F.3d 20, 24 (1st Cir. 2000) (consistent failure to assert innocence weighs against reversal of trial court's decision). He merely argues that had he been advised of the certain collateral immigration consequences, he would not have pleaded guilty. To establish prejudice, however, the defendant must show that he would have both gone to trial and likely been acquitted. No evidence has been offered to support such a contention. Furthermore, the threat of deportation existed whether the defendant was convicted on a guilty plea or following a trial. Because the defendant has failed to satisfy his dual burden in demonstrating ineffective assistance of counsel, his claim fails.

Our conclusion today is in agreement with the majority of jurisdictions, both federal and state, that have

considered the issue of whether the failure to advise a client of the immigration consequences of a guilty plea constitutes ineffective assistance of counsel. See id., 25; *United States* v. *Banda*, 1 F.3d 354, 356 (5th Cir. 1993); *Varela* v. *Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992), cert. denied, 507 U.S. 1039, 113 S. Ct. 1869, 123 L. Ed. 2d 489 (1993); *United States* v. *Del Rosario*, 902 F.2d 55, 58–59 (D.C. Cir.), cert. denied, 498 U.S. 942, 111 S. Ct. 352, 112 L. Ed. 2d 316 (1990); *Santos* v. *Kolb*, 880 F.2d 941, 944–45 (7th Cir. 1989), cert. denied, 493 U.S. 1059, 110 S. Ct. 873, 107 L. Ed. 2d 956 (1990); *United States* v. *George*, supra, 869 F.2d 337–38; *United States* v. *DeFreitas*, 865 F.2d 80, 82 (4th Cir. 1989); *United States* v. *Yearwood*, supra, 863 F.2d 7–8; *United States* v. *Campbell*, supra, 778 F.2d 768–69; *United States* v. *Gavilan*, 761 F.2d 226, 228–29 (5th Cir. 1985); *United States* v. *Santelises*, 509 F.2d 703, 704 (2d Cir. 1975); *Government of Virgin Islands* v. *Pamphile*, 604 F. Sup. 753, 756–57 (D.V.I. 1985); *Oyekoya* v. *State*, 558 So. 2d 990, 990–91 (Ala. Crim. App. 1989); *Tafoya* v. *State*, 500 P.2d 247, 252 (Alaska 1972), cert. denied, 410 U.S. 945, 93 S. Ct. 1389, 35 L. Ed. 2d 611 (1973); *State* v. *Rosas*, 183 Ariz. 421, 423, 904 P.2d 1245 (App. 1995); *Matos* v. *United States*, 631 A.2d 28, 31–32 (D.C. 1993); *State* v. *Ginebra*, 511 So. 2d 960, 962 (Fla. 1987); *People* v. *Huante*, 143 Ill. 2d 61, 73–74, 571 N.E.2d 736 (1991); *Mott* v. *State*, 407 N.W.2d 581, 583 (Iowa 1987); *Daley* v. *State*, 61 Md. App. 486, 490, 487 A.2d 320 (1985); *Commonwealth* v. *Fraire*, 55 Mass. App. 916, 917–18, 774 N.E.2d 677 (2002); *Alanis* v. *State*, 583 N.W.2d 573, 579 (Minn. 1998); *State* v. *Chung*, supra, 210 N.J. Super. 435; *People* v. *Boodhoo*, 191 App. Div. 2d 448, 449, 593 N.Y.S.2d 882 (1993); *People* v. *Dor*, 132 Misc. 2d 568, 572, 505 N.Y.S.2d 317 (1986); *State* v. *Dalman*, 520 N.W.2d 860, 863–64 (N.D. 1994); *Commonwealth* v. *Frometa*, 520 Pa. 552, 556, 555 A.2d 92 (1989); *State* v. *Figueroa*, 639 A.2d 495, 501 (R.I. 1994); *State* v. *McFad-*

*den*, 884 P.2d 1303, 1305 (Utah App. 1994), cert. denied, 892 P.2d 13 (Utah 1995); *State* v. *Holley*, 75 Wash. App. 191, 198, 876 P.2d 973 (1994), on appeal after remand, 86 Wash. App. 1100 (1997), review denied, 133 Wash. 2d 1032, 950 P.2d 476 (1998); *State* v. *Santos*, 136 Wis. 2d 528, 532, 401 N.W.2d 856 (App. 1987).

We therefore hold, in accordance with an overwhelming majority of jurisdictions, that effective assistance of counsel may be rendered without advising a client whether deportation will result from a guilty plea.

The judgment is affirmed.

In this opinion the other judges concurred.