******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEAN ST. JUSTE *v.* COMMISSIONER
OF CORRECTION
(AC 33424)

Lavine, Alvord and Keller, Js.

*Syllabus*

The petitioner, who had been convicted in 2007, on a guilty plea, of the crimes of assault in the second degree and possession of a sawed-off shotgun, sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance in failing to inform him that his conviction of assault in the second degree would result in his certain deportation. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court, which dismissed the appeal as moot. Thereafter, the petitioner, on the granting of certification, appealed to our Supreme Court, which reversed this court's judgment and remanded the case to this court with direction to consider the merits of the petitioner's appeal. On appeal, the petitioner claimed that the judgment of the habeas court should be reversed because, under the standard set forth in *Padilla* v. *Kentucky* (599 U.S. 356), his trial counsel provided ineffective assistance in failing to advise the petitioner, prior to entering the plea agreement, that his assault conviction would make him subject to automatic deportation. After the parties filed their principal briefs, the United States Supreme Court, in *Chaidez* v. *United States* (568 U.S. 342), held that *Padilla* does not apply retroactively to petitioners whose convictions had become final by the time that the *Padilla* decision was announced in March, 2010. *Held* that the habeas court properly denied the habeas petition; under the law as it existed prior to *Padilla*, the petitioner failed to sustain his burden of demonstrating that his trial counsel performed deficiently, as legal advice concerning the deportation consequences of a guilty plea was not constitutionally guaranteed prior to *Padilla*, appellate courts in Connecticut having concluded that advice concerning collateral consequences such as deportation was not within the scope of the constitutional protection afforded by the sixth amendment, and, thus, the petitioner failed to demonstrate that his counsel's performance was constitutionally deficient or that it rendered his plea unintelligent or involuntary in a constitutional sense.

Argued May 30—officially released July 17, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *T. Santos, J.*; judgment denying the petition; thereafter, the petitioner, on the granting of certification, appealed to this court, which dismissed the appeal; subsequently, the petitioner, on the granting of certification, appealed to our Supreme Court, which reversed this court's judgment and remanded the matter to this court. *Affirmed.*

*Justine F. Miller*, assigned counsel, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Adam E. Mattei*, former assistant state's attorney, and *Gerard P. Eisenman*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. This appeal returns to the Appellate Court on remand from our Supreme Court for resolution of the claim raised by the petitioner, Jean St. Juste. In 2011, following a grant of certification to appeal by the habeas court, the petitioner appealed to this court from the judgment of the habeas court denying his amended petition for a writ of habeas corpus, which challenged a conviction of assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The petitioner claimed that the habeas court improperly rejected his claim that his trial counsel had rendered ineffective assistance because he failed to inform him that if he were convicted of the crime of assault in the second degree, his conviction would result in his certain deportation. In 2015, this court dismissed the appeal on mootness grounds. *St. Juste* v. *Commissioner of Correction*, 155 Conn. App. 164, 181, 109 A.3d 523 (2015). In 2018, following a grant of certification to appeal, our Supreme Court reversed the judgment of this court and remanded the case to this court with direction to consider the merits of the petitioner's appeal. *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 219, 177 A.3d 1144 (2018). Having done so, we affirm the judgment of the habeas court.

The relevant facts and procedural history were set forth in this court's prior opinion, as follows: "On July 26, 2010, the petitioner filed an amended petition for a writ of habeas corpus in which he alleged that, on December 17, 2007, he pleaded guilty to assault in the second degree in violation of . . . § 53a-60 (a) (2), and guilty under the *Alford* doctrine[1] to possession of a sawed-off shotgun in violation of General Statutes § 53a-211. He was represented by Attorney Howard Ignal. On January 28, 2008, he was sentenced pursuant to a plea agreement to a total effective sentence of five years incarceration, execution suspended after eighteen months, followed by five years of probation. On July 27, 2009, the petitioner, represented by Attorney Anthony Collins, filed a motion to withdraw his guilty pleas on the ground that at the time he entered them, he did not understand their immigration consequences. On November 17, 2009, the court denied the motion.

"In his two count amended petition, the petitioner alleged that Ignal rendered ineffective assistance of counsel because, among other deficiencies, he (1) failed to educate himself about the immigration consequences of the pleas, (2) misadvised the petitioner with respect to the immigration consequences of the pleas, and (3) failed to meaningfully discuss with the petitioner what immigration consequences could and/or would flow from the pleas. The petitioner alleged that Ignal's representation was below that displayed by attorneys with ordinary training and skill in the criminal law, and that but for such representation, he would not have pleaded

guilty and he would have resolved the case in a way that would not result in 'deportation consequences.' In the second count of his petition, the petitioner alleged that his pleas were not knowingly, voluntarily, and intelligently made because he made them under the mistaken belief that his conviction would not subject him to deportation. The petitioner alleged that '[a]s a result of his conviction, [he] has been ordered removed from this country by an immigration judge, and the judge's order has been affirmed by the Board of Immigration Appeals.' Additionally, the petitioner alleged that '[t]he basis for the removal order was the conviction for assault in the second degree and possession of a sawed-off shotgun.'[2]

"Following an evidentiary hearing, the habeas court orally rendered its decision denying the petition.[3] In relevant part, the court stated that it accepted as true the testimony of the petitioner's trial attorney, Ignal. The court stated: '[Ignal] clearly saw all of the problems with this case, and they all spelled the word "immigration." From day one, I think, he was alerted to this and did everything he could, from what I can see, to try to avert the ultimate result.' The court found that Ignal was well aware of the adverse consequences of the pleas insofar as they involved deportation, and that he had thoroughly discussed that issue with the petitioner. The court rejected the claim of ineffective assistance of counsel. Later, the court granted the petitioner's petition for certification to appeal."[4] (Footnotes in original.) *St. Juste* v. *Commissioner of Correction*, supra, 155 Conn. App. 166–67. We observe that the court's ruling was based on its finding that the petitioner failed in satisfying his burden to demonstrate that Ignal's performance was deficient. The court did not reach the issue of whether the petitioner sustained his burden of demonstrating that he was prejudiced by Ignal's representation. Moreover, we observe that the petitioner's claim on appeal is limited to representation afforded to him in connection with his guilty plea for assault in the second degree.

In his principal appellate brief, the petitioner argues that the judgment of the habeas court should be reversed because, under the standard set forth in *Padilla* v. *Kentucky*, 599 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010),[5] Ignal rendered deficient representation in that, prior to entering the plea agreement, Ignal failed to advise him "that his [assault] conviction would make him subject to automatic deportation."[6] Moreover, the petitioner argues that he suffered actual prejudice as a result of the ineffective representation because there is a reasonable probability that, if he had known the adverse immigration consequences of his plea, he would not have pleaded guilty but would have proceeded to trial. After the parties filed their principal briefs, the United States Supreme Court, in *Chaidez* v. *United States*, 568 U.S. 342, 133 S. Ct. 1103, 185 L.

Ed. 2d 149 (2013), held that *Padilla* does not apply retroactively to petitioners whose convictions had become final by the time that the *Padilla* decision was announced on March 31, 2010. See *Guerra* v. *State*, 150 Conn. App. 68, 74 n.4, 89 A.3d 1028 (interpreting *Chaidez*), cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014); *Alcena* v. *Commissioner of Correction*, 146 Conn. App. 370, 374, 76 A.3d 742 (same), cert. denied, 310 Conn. 948, 80 A.3d 905 (2013).

By way of supplemental briefing, the parties have addressed the effect of *Chaidez* on the present appeal. The parties do not dispute, and we agree, that *Padilla* does not apply to the petitioner. The issue correctly framed by the parties' supplemental briefs is whether the petitioner has sustained his burden of demonstrating that Ignal performed deficiently under the law as it existed prior to *Padilla*.

"[T]he governing legal principles in cases involving claims of ineffective assistance of counsel arising in connection with guilty pleas are set forth in *Strickland* [v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] and *Hill* [v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. [According to] *Strickland*, [an ineffective assistance of counsel] claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . Under . . . *Hill* . . . which . . . modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland* as modified by *Hill*] are satisfied." (Citation omitted; internal quotation marks omitted.) *Bozelko* v. *Commissioner of Correction*, 162 Conn. App. 716, 722–23, 133 A.3d 185, cert. denied, 320 Conn. 926, 133 A.3d 458 (2016); see also *Carraway* v. *Commissioner of Correction*, 317 Conn. 594, 600 n.6, 119 A.3d 1153 (2015) (clarifying that when *Hill*'s prejudice standard governs, petitioners bear burden of demonstrating that, but for counsel's ineffective performance, they would not have pleaded guilty and would have proceeded to trial).

The petitioner argues that Ignal rendered deficient performance by failing to adequately inform him of the inevitable deportation consequences of his guilty plea.

Prior to *Padilla*, however, the overwhelming majority of state and federal courts to have considered whether the sixth amendment's guarantee of effective representation required attorneys to inform their clients of such consequences decided that such advice was not constitutionally guaranteed. See *Chaidez* v. *United States*, supra, 568 U.S. 350–51. It is a settled proposition that, prior to *Padilla*, appellate courts in Connecticut also had concluded that advice concerning collateral consequences such as deportation was not within the scope of the constitutional protection afforded by the sixth amendment. See *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 115–17, 111 A.3d 829 (2015), and cases cited therein. As our Supreme Court has explained, "even if professional norms [prior to *Padilla*] required that trial counsel inform a noncitizen criminal defendant of a plea's virtually mandatory deportation consequences, the rule announced in *Padilla* was a new rule under Connecticut law because more than one Connecticut court had noted . . . that such advice was not constitutionally required." Id., 116–17.

Because the petitioner cannot demonstrate that advice concerning deportation consequences was constitutionally required prior to *Padilla*, he has failed to sustain his burden of demonstrating that Ignal's representation was constitutionally deficient or that it rendered his plea unintelligent or involuntary in a constitutional sense. This conclusion is amply supported by this court's pre-*Padilla* jurisprudence. See, e.g., *Niver* v. *Commissioner of Correction*, 101 Conn. App. 1, 4–5, 919 A.2d 1073 (2007) (impact of plea's immigration consequences on defendant is not direct impact of plea and is not of constitutional magnitude); *State* v. *Aquino*, 89 Conn. App. 395, 404–405, 873 A.2d 1075 (2005) (same), rev'd on other grounds, 279 Conn. 293, 901 A.2d 1194 (2006); *State* v. *Irala*, 68 Conn. App. 499, 520, 792 A.2d 109 (same),[7] cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)." *St. Juste* v. *Commissioner of Correction*, supra, 155 Conn. App. 166 n.1.

[2] "[T]he record suggests that the petitioner was deported solely because of his conviction of assault in the second degree." *St. Juste* v. *Commissioner of Correction*, supra, 155 Conn. App. 167 n.2.

[3] "Subsequently, the court filed a signed transcript of its decision in accordance with Practice Book § 64-1 (a)." *St. Juste* v. *Commissioner of Correction*, supra, 155 Conn. App. 167 n.3.

[4] "In his brief before this court, the petitioner represents that he was in the United States as a permanent legal resident and that, after he served the eighteen month term of incarceration imposed by the trial court as a result of his conviction of assault in the second degree and possession of a sawed-off shotgun, he was detained in a federal facility pending his removal from the United States. Further, the petitioner represents, and it is not in dispute, that on April 15, 2011, he was deported to Haiti. Relying on the September 2, 2009 decision of the United States Immigration Court ordering the petitioner's deportation to Haiti, the respondent acknowledges that the

petitioner's assault conviction was a factor in his deportation." *St. Juste* v. *Commissioner of Correction*, supra, 155 Conn. App. 169.

[5] "*Padilla* held that before an alien criminal defendant pleads guilty to a criminal offense for which he is subject to deportation, his defense attorney must advise him of the deportation consequences of his plea and resulting conviction. On that score, the Supreme Court concluded that because deportation is such a great, life-altering consequence of a criminal conviction, an alien defendant's plea of guilty to a deportable offense without knowledge of that consequence cannot be considered a knowing and intelligent waiver of his right not to be convicted of that offense unless his guilt is established beyond a reasonable doubt at a full, fair adversary trial." *Guerra* v. *State*, 150 Conn. App. 68, 72–73, 89 A.3d 1028, cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014).

[6] The petitioner argues that the evidence presented at the habeas trial reflects that he and Ignal "did not talk much about immigration consequences" and that Ignal merely informed him that "immigration would deal with him" after he served his sentence. The petitioner does not argue that Ignal provided him with inaccurate information concerning immigration consequences but that he was not advised of the certainty of the immigration consequences of his plea. The petitioner argues: "Although Attorney Ignal never told his client that he wouldn't get deported if he pleaded guilty, Ignal also never told his client that he would face inevitable deportation if he did plead guilty."

[7] To the extent that the petitioner interprets isolated statements in *Irala* to support his argument that advice concerning the collateral consequences of a guilty plea, such as immigration consequences, was constitutionally required prior to *Padilla*, we disagree with his interpretation of *Irala*.

———————————————