**UNITED STATES of America, Plaintiff,**

v.

**V.J. GEORGE, Defendant.***

**83 CR 159.**

United States District Court,
N.D. Illinois, E.D.

March 16, 1988.

Anton R. Valukas, U.S. Atty., Michael T. Mullen, Frank S. Cservenyak, Jr., Chicago, Ill., for plaintiff.

Walter Jones, Jr., Curiel & Jones, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's January 7, 1988 memorandum opinion and order (the "Opinion," 676 F.Supp. 863) engaged in a detailed analysis of the 28 U.S.C. § 2255 ("Section 2255") motion filed by V.J. George ("George") to vacate or set aside the probationary sentence this Court had imposed on him September 1, 1983.[1] Because George could not demand more than the Attorney General's exercise of discretion under INA § 212(c) on the merits of George's total situation—that is, because he could not require that discretion to be exercised in a particular way—George's motion had an obvious and inherent potential for mootness. That potential led this Court to stay its ultimate decision to allow INS the "opportunity to decide whether such discretion should or should not be exercised favorably" (676 F.Supp. at 870).[2]

On January 25 the Assistant United States Attorney returned to court and demonstrated why INS has so frequently been characterized as exhibiting—in a disparaging sense—"the bureaucratic mind at work." Instead of perceiving the obvious desirability of reaching the substantive discretionary determination invited by the Opinion—a determination that would inevitably be a fully dispositive resolution of George's situation—INS woodenly responded with the identical procedural conclusion it had previously reached: that George had been in the United States for less than seven years of uninterrupted lawful resi-

---

* As this opinion reflects, it is not all self-contained. It must be read in conjunction with the "Opinion" reported at 676 F.Supp. 863.

1. This opinion will assume total familiarity with the Opinion. Accordingly (1) no repetition of the factual background of the case will be undertaken and (2) all terms defined in the Opinion will be carried forward here with identical meanings.

2. Opinion, *id.* at 869–70, under the headings "Potential Mootness" and "Conclusion," explained the reasoning that compelled the stay and that called for any sensible administrator to proceed with a "determin[ation] whether a discretionary waiver of deportation under INA § 212(c) ought to be granted to George" (*id.* at 870).

dence and was therefore ineligible for INA § 212(c) relief![3]

That answer of course forces this Court's hand in a way the Opinion had sought to avoid. But significantly in *Strickland–Hill* terms, INS's most recent answer has established the "prejudice" prong of the cause-and-prejudice dichotomy:

1. Given INS's present answer, George really *has* been deprived of the opportunity to have the Attorney General consider the possibility of waiver of deportation—and George's guilty plea was unquestionably the cause of that deprivation. Had George proceeded to trial rather than pleading guilty, even a guilty finding (let alone an acquittal) would have delayed the entire process so that George would then have accumulated seven years of lawful domicile, thus making him eligible for INA § 212(c) relief.

2. That conclusion is not altered by George's lack of entitlement to a *favorable* decision by the Attorney General. In this instance, prejudice inheres in the lack of opportunity to be considered for waiver, not in the assurance that waiver will be granted. This is no different from the situation in which mandamus will lie to compel a public official to perform his or her duty to exercise discretion, although it will not lie to compel him or her to exercise that discretion in a particular way. And as Opinion, 676 F.Supp. at 867–68 reflects, this Court on balance finds the "cause" branch of the formulation also to have been satisfied here.

## Conclusion

Shaping relief in this case poses an unusual problem—indeed, that was not the least of the reasons for the stay and the procedure urged in the Opinion. When a court finds a defendant's conviction to have resulted from a violation of his or her constitutional rights, the conventional remedy is to vacate the conviction. That is one reason Section 2255 relief is not normally granted when the court is satisfied that the consequence will surely be a renewal of the conviction the second time around (after all, that is what the prejudice inquiry is supposed to focus on). In this instance, however, the timing rather than the fact of George's conviction forms the heart of the prejudice he sustained from the inadequate assistance of counsel.

Hence the current intransigence of INS in rejecting the invitation extended in the Opinion has forced a result that could have been averted. George's conviction and sentencing are vacated. This action is set for a status hearing April 1, 1988 at 9 a.m.—an early date chosen to permit the future course of this action to be charted.[4]

---

3. This Court is not so naive as to assume INS must necessarily agree with the line of analysis developed in the Opinion. Indeed the Opinion plainly suggested the possibility of differing answers to the ultimate question whether George had suffered ineffective assistance of counsel. But the Opinion even more plainly pointed out that the less-than-seven-years'-lawful-residence status (following from George's guilty plea) was the beginning and *not* the end of the analysis. For INS to view that status as the ultimate answer rather than as a mere step in the inquiry is extraordinarily myopic. It appears to reflect a Pavlovian response rather than a reasoned one.

4. INS has agreed to stay George's deportation pending final resolution of the case. Now a live indictment is again operative against him. If George is somehow perceived as a threat to society—a premise that INS has not suggested and that would certainly seem impossible to sustain—the course INS has chosen in response to the Opinion seems totally counterproductive. At a minimum the further proceedings for which this Court has been compelled to open the door will delay George's possible deportation a great deal more than what the Opinion's recommended course of action would have produced—and the prospects of appeal compound the potential for further delay.