**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**V.J. GEORGE, Defendant–Appellee.**

No. 88–1752.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1988.

Decided Feb. 15, 1989.

Mark L. Rotert, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellant.

Walter Jones, Jr., Curiel & Jones, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

On June 21, 1983, V.J. George, a resident alien in the United States since 1977, pleaded guilty to conspiracy and possession with the intent to distribute 6,200 grams of opium in violation of 21 U.S.C. §§ 846 and 841(a)(1). He was sentenced to four years' probation on September 1, 1983. At the conclusion of George's criminal trial, the Immigration and Naturalization Service ("INS") initiated deportation proceedings as a result of his conviction for a drug offense. On June 19, 1987, while this Court was considering his appeal from the Board of Immigration Appeals decision to deport him, George filed a motion in the district court to vacate or set aside his conviction and sentence. His motion alleged that he received ineffective assist-

ance of counsel because his counsel failed to inform him that his guilty plea could subject him to deportation. The district court, Judge Shadur, granted George's motion and the United States has appealed from that decision. See 676 F.Supp. 863 and 679 F.Supp. 818. We reverse.

## I. Factual Background And Proceedings Below

V.J. George,[1] a native and citizen of India, was admitted to the United States as a lawful permanent resident on August 12, 1977, and has remained here since. On March 25, 1983, a federal grand jury charged George and two others in a five-count indictment alleging the three conspired to possess opium with the intent to distribute and possessed opium and hashish with the intent to distribute. George was originally represented by an attorney who also represented one of his co-defendants. George sought substitute counsel and attorney Charles W. Nixon was appointed to represent him.

On June 21, 1983, George entered into a formal plea agreement with the prosecution whereby he would plead guilty to the two counts of the indictment charging him with conspiracy and possession of 6,200 grams of opium. George pleaded guilty later that same day, and the district court admonished him as to the effect of his guilty plea pursuant to Federal Rule of Criminal Procedure 11. George acknowledged his understanding of the nature of the charges, his awareness of the penalties he faced, and his admission that he committed the described offenses. The district court accepted the plea and ordered a presentence investigation.

Sentencing was set for September 1, 1983. George made no attempt to withdraw his guilty plea and sentencing proceeded. Defense counsel Nixon admitted that no entrapment defense existed and instead stressed that the district court consider George's totally unsophisticated behavior. Moreover, Nixon asked the district court to give George probation because, since George pleaded guilty to a drug offense, he was subject to deportation and would have no defense if a deportation proceeding was in fact brought against him. George, speaking on his own behalf, asked the district court to give him "a second chance to prove [his] worth to society," in return "promis[ing] in [his] entire life, no matter where it is, [he] will always uphold the true virtues and perfections." Finally, immediately prior to imposing sentence, the district court reminded the parties that by virtue of statutory dictate, it was unable to issue a recommendation that George not be deported. George was then sentenced to concurrent terms of four years' probation on the two counts to which he pled guilty, even though the government recommended incarceration. No appeal was taken.

Following his drug offense conviction and pursuant to 8 U.S.C. § 1251(a)(11), the INS initiated deportation proceedings against George.[2] He resisted deportation by arguing to the immigration judge that he was a victim of entrapment and that his guilty plea was coerced. Yet at sentencing George did not contradict his counsel's statement that the entrapment defense was unavailable or his own admission at the plea hearing and in the plea agreement that he had committed the offenses charged and had not been induced by the government to plead guilty. The sentencing judge agreed that George's counsel's assessment of no entrapment defense was realistic. George also asked the immigration judge that he be considered for discre-

---

1. Throughout the course of his criminal proceedings and his efforts to obtain post-conviction relief, defendant has referred to himself as V.J. George. During his efforts to resist deportation, however, defendant referred to himself as George Job Variamparambil, his original name in India. See *Variamparambil v. Immigration and Naturalization Service,* 831 F.2d 1362 (7th Cir.1987). Throughout this opinion we shall refer to the defendant as V.J. George,

the name in which he was indicted and addressed below.

2. See *Variamparambil v. Immigration and Naturalization Service,* 831 F.2d 1362 (7th Cir.1987), in which this Court reviewed George's arguments against the deportation proceedings, ultimately upholding the decision to deport George.

tionary treatment under 8 U.S.C. § 1182(c), which grants discretion to the Attorney General to waive his authority to deport a resident alien convicted of drug offenses provided the alien has accumulated "a lawful unrelinquished domicile of seven consecutive years" in the United States.[3] The immigration judge, in an order dated March 21, 1984, declined to entertain the entrapment claim and determined that since George's lawful resident alien status commenced on August 12, 1977, he had not accumulated seven years of lawful domicile and consequently was ineligible for discretionary consideration under Section 1182(c). Accordingly, the immigration judge found George deportable on March 21, 1984.

George appealed to the Board of Immigration Appeals ("BIA"). On August 1, 1984, the BIA affirmed the decision of the immigration judge—eleven days short of George's seventh-year anniversary as a lawful domiciliary of the United States and arguably eligible for discretionary consideration under Section 1182(c). On August 15, 1984, four days after George had accumulated seven years' domicile, he moved the BIA to reopen his proceedings and consider his request for discretionary treatment under Section 1182(c). The BIA refused, holding that its order of August 1, 1984 was final and thus terminated George's tenure as a "lawful" resident alien. Consequently, George remained eleven days short of the requisite seven-year status. In *Variamparambil* this Court affirmed the decision of the BIA, holding that the date on which the BIA affirms an immigration judge's finding that an alien was convicted of an offense and is deportable ends that alien's status as a "lawful" resident.

After oral arguments but prior to the decision of this Court in *Variamparambil*, George, with the assistance of new counsel, filed a motion in the district court to vacate or set aside his sentence, premising jurisdiction on 28 U.S.C. § 2255. George argued in this motion, which is the sole subject of this review, that in the criminal proceeding he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution.

An evidentiary hearing was held on August 5, 1987. George testified that Nixon knew prior to the entry of plea that he was a citizen of India; yet Nixon failed to inform George of the ramifications a conviction would have on his immigration status until after his guilty plea was entered. Since the negotiations with the prosecutors and ultimate plea agreement were silent on immigration matters, he assertedly believed that no immigration consequences existed. Moreover, despite his statements under oath and signature on the plea agreement to the contrary, he testified that he considers himself innocent of the charges to which he pleaded guilty because he was entrapped. He also stated that he would not have pleaded guilty to the charges had he known it would subject him to deportation.

Nixon also testified during the evidentiary hearing, confirming that he was aware of George's immigration status and that a guilty plea to the charges would likely result in deportation. He stated that on a number of occasions he had discussed the possibility of deportation with George, but was not sure whether any of these discussions occurred prior to the entry of the guilty plea, although he was certain that they occurred prior to sentencing, as George had conceded in his testimony. Although apprised before sentencing of the likelihood of deportation, George never requested Nixon to file a motion to vacate the guilty plea.

## II. Analysis

■ It is well accepted that an "'accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by his plea'

---

3. On its face Section 1182(c) appears limited to the exclusion of aliens seeking re-entry to this country. However, in *Variamparambil v. Immigration and Naturalization Service,* 831 F.2d 1362 (1987), this Court agreed with the Second Circuit that in order to avoid a violation of the equal protection clause, this Section must also be applicable to efforts to deport resident aliens under Section 1251. 831 F.2d at 1364 n. 1.

because a plea of guilty is 'valid only if made intelligently and voluntarily.'" *Downs–Morgan v. United States,* 765 F.2d 1534, 1538 (11th Cir.1985). Nonetheless, while a guilty plea must be intelligently made, this requirement does not mandate that "all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction proceeding." *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763; *Downs–Morgan,* 765 F.2d at 1539. Counsel arguably owes a lesser duty to the defendant who chooses to plead guilty rather than the one who chooses to go to trial, since the former need only be apprised of an understanding of the law in relation to the facts of the case so that he may make an informed choice between accepting the prosecutor's offer and pleading guilty or going to trial. *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir.1984).

In order to show that he received ineffective assistance of counsel, a convicted defendant must show that: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 2064–2065, 2068, 80 L.Ed.2d 674. Although *Strickland* involved a claim of ineffective assistance during a capital sentencing procedure, this same analysis is also proper in the context of a guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 370, 88 L.Ed.2d 203.

▇ The district court found as a matter of fact that Nixon did inform George of the possible deportation consequences of a conviction, although this did not occur until after George entered his guilty plea but prior to sentencing. The court held that Nixon's failure to advise George earlier of the likely deportation consequences, and thus recommend a plea of not guilty to lengthen George's tenure as a lawful resident so that he would be eligible to seek discretionary consideration under Section 1182(c), amounted to constitutionally ineffective assistance of counsel. Despite the collateral nature of a deportation proceeding which may result from a criminal trial, the court relied upon Nixon's actual knowledge of the likely consequence and determined that in light of Nixon's awareness, his omission amounted to ineffective assistance of counsel. Further, the district court determined that George suffered actual prejudice as a result of his ineffective assistance of counsel because he lost the opportunity to petition the Attorney General to exercise his discretion and decline deporting George.[4]

We cannot agree with the district court that George's conviction and sentencing must be vacated because his counsel did not advise him of the possibility of deportation until after his June 1983 guilty plea. Between that event and the September 1983 sentencing, attorney Nixon "three or four times" advised him of that possibility[5] and yet George chose to take his chances with deportation rather than move to vacate the plea or even to appeal from his conviction. Therefore, the fact that deportation was ultimately ordered by the INS did not result from ineffective assistance of trial counsel in violation of the Sixth Amendment. While it would have been preferable for Nixon to have alerted

---

**4.** In its order of January 7, 1988, the district court stayed the proceeding and instructed the Assistant United States Attorney representing the government in this action to present George's case to the INS (the Attorney General's designee) to determine whether George would likely have been successful under Section 1182(c). This was done so that the district court could determine whether George suffered actual prejudice from the purported ineffective assistance of counsel. 676 F.Supp. 863. When the INS refused to offer any insight as to its possible handling of George's case, and consequently

reminding the district court why the INS is noted for exemplifying the "bureaucratic mind at work," the court determined that George's lack of opportunity to be considered for discretionary treatment amounted to prejudice. 679 F.Supp. 818.

**5.** The exact dates that Nixon, as well as George's cousin, told him of the deportation possibility are unknown in the record. However, Judge Shadur found that Nixon had done so "several times" before the sentencing.

George prior to his plea, the matter was still salvagable during the subsequent months before the sentencing hearing or afterwards by appeal. In such a setting, it was improper to find a constitutional violation. It is noteworthy too that at the sentencing hearing George did not contradict his counsel's statement that he had no entrapment defense, echoed by the trial judge, while in the present proceeding George relies on such a defense as well as on the previously waived defense of coercion.

George claims that Nixon failed to offer effective assistance of counsel by not informing him of the immigration consequences of a conviction for a drug offense. George contends that had he known of the immigration consequences, he would not have pleaded guilty and instead would have gone to trial. Consequently, he urges this Court to find that his guilty plea was not knowing and voluntary. But actual knowledge of consequences which are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea. A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding. It is collateral to the criminal prosecution. While the Sixth Amendment assures an accused of effective assistance of counsel in *"criminal prosecutions,"* this assurance does not extend to collateral aspects of the prosecution. Various circuits have addressed the issue of failure of counsel to inform an accused of the likely deportation consequences arising out of a guilty plea, and have determined that deportation is a collateral consequence of the criminal proceeding and therefore no ineffective assistance of counsel was found. *United States v. Yearwood,* 863 F.2d 6 (4th Cir.1988); *United States v. Campbell,* 778 F.2d 764 (11th Cir.1985); *United States v. Gavilan,* 761 F.2d 226 (5th Cir.1985); *United States v. Santelises,* 509 F.2d 703 (2d Cir.1975).

While the district court relied on *Downs–Morgan,* decided four months previously to *Campbell* in the same Circuit, there the defendant's attorney had wrongly advised him that conviction would not lead to deportation. Nevertheless, the court of appeals refused to hold that even such an affirmative misrepresentation, which resulted in a guilty plea by a defendant with a colorable claim of innocence, necessarily constituted ineffective assistance of counsel. 765 F.2d at 1540–1541. A remand was accorded because Downs–Morgan, who by then was on parole, had alleged that deportation would result in his imprisonment or execution in Nicaragua. 765 F.2d at 1541 n. 15. Here no such affirmative misrepresentation had been made nor did defendant show that his return to India would result in dire consequences. See *Variamparambil v. Immigration and Naturalization Service,* 831 F.2d 1362 (7th Cir.1987).

*Janvier v. United States,* 793 F.2d 449 (2d Cir.1986), on which defendant relies (Br. 19–20), is also inapt because there 8 U.S.C. § 1251(b)(2) gave the district judge authority to decide whether defendant's conviction should be disregarded as a basis for deportation and therefore counsel's failure to make a recommendation of non-deportation at sentencing may have constituted ineffective assistance of counsel, a question left open for the remand there. Here the trial judge had no such power, so that *Janvier* is of no precedential value in this case.

Defendant relies heavily on *People v. Padilla,* 151 Ill.App.3d 297, 104 Ill.Dec. 522, 502 N.E.2d 1182 (1st Dist.1986), but there the subject of deportation was never discussed with defendant according to his counsel, while Padilla claimed that his counsel told him he could not be deported. Neither situation is present here, nor was the *Padilla* decision rested on constitutional grounds. Indeed the Appellate Court of Illinois noted that the federal courts have taken a contrary position. Because the *Padilla* circumstances were so different from George's, it need not detain us.[6]

---

6. Similarly, in *People v. Correa,* 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985), trial counsel had erroneously advised Correa that his narcotics conviction would not result in deportation.

In sum, George urges this Court to impose a blanket Sixth Amendment responsibility upon attorneys to inform their clients as to the immigration consequences of a criminal prosecution before they plead guilty, or alternatively, to hold attorneys constitutionally accountable for whatever superior skills they may possess. There are many collateral consequences to a criminal prosecution which, if not disclosed by counsel, nonetheless do not result in an involuntary plea of guilty. Consequently, we decline to hold as a matter of law that counsel's failure to inform a client as to the immigration consequences which may result from a guilty plea, without more, is "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. This is particularly so where a client like George was properly advised prior to sentencing.

JUDGMENT REVERSED.