STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

JUL 3 0 2010

RECEIVED

SUPERIOR COURT
CRIMINAL ACTION 1681,
DOCKET NOS. CR-96-1081;
CR-96-907 ,

STATE OF MAINE

v.

PHU TRUONG

ORDER ON MOTION TO
VACATE CONVICTIONS

### BEFORE THE COURT

Defendant Phu Truong (hereinafter "Truong") moves to vacate his convictions and moves for a new trial pursuant to Rules 1 and 2 of the Maine Rules of Criminal Procedure. Truong claims that his 1996 convictions were obtained in violation of his Sixth Amendment right to effective assistance of counsel on the ground that his attorney did not appropriately advise him of the potential adverse immigration consequences of his plea agreement.

### BACKGROUND

Truong entered the United States from Vietnam with his family in 1994. Truong was registered in the United States as a legal permanent resident and held a green card. Truong's father, Chinch Truong, is a naturalized citizen of the United States.

In 1996, Truong was charged with various counts of kidnapping, criminal threatening with the use of a dangerous weapon, assault, violations of a protection from abuse order, violations of conditions of release, endangering the welfare of a child, and tampering with a victim. *See* Cumber. Cty. Docket Numbers CR-96-1681 and CR-96-907. Attorney Michael Scott was appointed as Truong's defense attorney. On October 10, 1996, Truong entered into a plea

1

agreement, in which he pled guilty to three felony counts of violation of conditions of release, four misdemeanor counts of violation of a protection from abuse order, and one misdemeanor count of assault.

In September 2007, Truong's father had an initial consultation with Barbara Taylor (hereinafter "Taylor") of the Immigrant Legal Advocacy Project (ILAP) because he needed assistance renewing Truong's green card. ILAP is a non-profit legal aid agency that offers legal services to low-income Maine residents on immigration law issues. Taylor testified that ILAP was founded in 1998. Because Truong's father did not have the required documentation during the September 2007 consultation, Truong's father was unable to renew Truong's green card.[1]

Sometime between December 2008 and January 2009 Truong returned to Vietnam to visit family.[2] Truong's father once again met with Taylor in December 2008 seeking help renewing Truong's now-expired green card. Truong's father had learned that Truong's 1996 criminal convictions prevented Truong from returning to the United States. Truong's 1996 convictions rendered him both deportable and inadmissible under the federal immigration and naturalization statutes. *See* 8 U.S.C. § 1227[3] and 8 U.S.C. § 1182(a)(2(A)(ii).[4]

---

[1] Barbara Taylor testified that there was some confusion during the September 2007 meeting because she initially thought that Truong's father was in fact Phu Truong. Shortly after the meeting, this confusion was resolved.

[2] While the date Truong left the United States is unclear, it is likely that Truong left in December 2008 because Taylor testified that Truong's father said Truong was in Vietnam when they met in December 2008.

[3] It is the court's understanding that the charges against Truong in 1996 may have involved domestic violence. Domestic violence is a deportable offense under 8 U.S.C. § 1227(a)(2)(E). Truong pled guilty to four counts of violation of protection from abuse order. Under 8 U.S.C. § 1227(a)(2)(E)(ii), a violation of a protection order from a court is a deportable offense. Truong also pled to three counts of violations of conditions of

Truong's father would like to petition for his son's return. A petition for re-entry would be futile at this point unless Truong's 1996 convictions are vacated because Truong is deportable and inadmissible as a result of his 1996 convictions.

The transcript from Truong's 1996 Rule 11 plea proceeding is unavailable. A letter from Truong's former defense counsel Mike Scott, states that he has no independent recollection of his conversations with Truong, and that he cannot recall if it was his routine practice to advise a client of immigration consequences in 1996. Ex. 4 from the July 16, 2010 hearing. On July 16, 2010, at a hearing on this motion, Truong's father testified that Truong's attorney never advised Truong of the immigration consequences of his plea agreement in 1996, and that Truong only learned of the adverse immigration consequences after he tried to return to the United States from his December 2008/January 2009 visit to Vietnam.[5] Truong's father is concerned for Truong's well being. Truong's father

---

release and one count of assault pursuant to 17-A M.R.S. § 207, which may have made him deportable under 8 U.S.C. 1227(a)(2)(A)(i). Under 8 U.S.C. § 1227(a)(2)(A)(i), any alien who is convicted of a crime involving moral turpitude committed within five years after admission to the United States for which a sentence of one year or longer may be imposed is deportable. 8 U.S.C. § 1227(a)(2)(A)(i). "Assault may or may not involve moral turpitude, depending on an assessment of both state of mind and the level of harm required to complete the offense." *Mustafaj v. Holder*, 2010 U.S. App. LEXIS 4910, *9-10 (2nd Cir. Mar. 9, 2010). At one end of the spectrum, simple assault does not involve moral turpitude, while at the other end of the spectrum certain types of aggravated assault, such as assault with a deadly weapon, have been held to be crimes involving moral turpitude. *Id.* It is possible that immigration authorities would consider Truong's offenses to have involved moral turpitude because the charges against Truong involved threatening a victim with a knife.

[4] Under 8 U.S.C. § 1182(a)(2)(A) any alien convicted of a crime involving moral turpitude is inadmissible. Truong's convictions for four counts of violating a protection from abuse order, and possibly his three counts for violating conditions of release, make him inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i).

[5] The court notes that Truong's father's testimony about what Truong said, and all of Ricky Ho's testimony about what Truong said over the phone is hearsay pursuant to Rule 801 of the Maine Rules of Evidence, for which there is no hearsay exception. The body

3

testified that Truong is mentally ill and was placed in a psychiatric hospital in Vietnam, where he remains today. Prior to the hearing and at the request of Truong's attorney, interpreter Ricky Ho contacted Truong at the psychiatric hospital in Vietnam to ask Truong questions related to the 1996 convictions. At the hearing, Ho testified that during the phone call Truong stated that in 1996 his attorney never advised him of the immigration consequences of his guilty plea. According to Truong, he was told he could plead guilty and go home. Truong did not become aware of the immigration consequences of his guilty plea until he tried to return to the United States from Vietnam. There was no testimony during the hearing that Truong would have pled any differently had he been advised of the immigration consequences of his guilty plea, even though Truong's attorney asserts this in the motion to vacate.

## DISCUSSION

Truong claims that based on the holding of *Padilla v. Kentucky*, he was denied his Sixth Amendment right to effective assistance of counsel because his attorney did not inform him of the immigration consequences of his guilty plea. *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). This court must decide if the holding in *Padilla* applies retroactively, such that Truong's defense attorney in 1996 was constitutionally required to inform him of the immigration consequences of his plea. The first part of the discussion below addresses the apparent lack of a procedural avenue for those similarly situated to Truong.

### 1. M.R. Crim. P. 1 vs. the Post-Conviction Review Process

---

of evidence from the July 16, 2010 hearing concerning ineffective assistance of counsel may not be able to be considered substantively despite the absence of an objection. This court will not address this issue further because Truong's motion is resolved on different grounds.

4

According to Truong, the Law Court's holdings in *State v. Ngo*, 2007 ME 2, 912 A.2d 1224, and *Ngo v. State*, 2008 ME 71, 946 A.2d 424, make Rule 1 and Rule 2 his only avenue for relief. Rule 1(c) of the Maine Rules of Criminal Procedure provides that "[w]hen no procedure is specifically prescribed the court shall proceed in any lawful manner not inconsistent with the Constitution of the United States or of the State of Maine, these rules or any applicable statutes." M.R. Crim. P. 1(c). Rule 2 of the Maine Rules of Criminal Procedure states: "These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." M.R. Crim. P. 2.

In *State v. Ngo* (Ngo I), Ngo brought a motion to vacate his convictions in District Court pursuant to Rule 1(c) of the Maine Rules of Criminal Procedure. *Ngo I*, ¶ 1, 912 A.2d at 1224. Ngo served his sentence and his probation was terminated early at the request of his probation officer in August 1999. *Ngo I*, ¶ 2, 912 A.2d at 1224. In April 2006, federal immigration officers instituted deportation proceedings against Ngo based on his 1998 criminal convictions. *Id.* Ngo sought to vacate his criminal convictions claiming he was deprived of effective assistance of counsel because neither his attorney nor the court warned him of the potential immigration consequences of pleading guilty. *Ngo I*, ¶ 3, 912 A.2d at 1225. Ngo brought his motion under Rule 1 instead of pursuant to the post conviction review statute because he did not believe he was under any restraint or impediment as required by 15 M.R.S. § 2124 for a post conviction review hearing. *Ngo I*, ¶ 3, 912 A.2d at 1225. The Law Court affirmed the

5

judgment of the District Court, holding: (1) the District Court lacked jurisdiction because M.R. Crim. P. 1(c) does not provide a remedy to substitute for the post conviction review process; (2) the post conviction review process is the exclusive means for judicial review of criminal convictions; and (3) the Superior Court has exclusive jurisdiction over the post conviction review process. *Ngo I*, ¶ 4, 912 A.2d at 1225. In a dissenting opinion, Justice Silver stated that "post-conviction review is only the exclusive mode of review for matters it covers" and it does not apply to those situated similarly to Ngo. *Ngo I*, ¶ 11, 912 A.2d at 1228 (Silver, J., dissenting).

In *Ngo v. State* (Ngo II), Ngo brought a petition for post-conviction review pursuant to 15 M.R.S. §§ 2121-2132, claiming that his status as a non-citizen awaiting deportation for deportable convictions subjected him to the functional equivalent of an indirect impediment within the meaning of 15 M.R.S. § 2124(3)(C). *Ngo II*, ¶ 6, 946 A.2d at 427. In Ngo II, the Law Court affirmed the dismissal of Ngo's appeal because Ngo was unable to demonstrate that his pending deportation proceedings were a restraint, an impediment, or the functional equivalent thereof within the meaning of the post-conviction review statute. *Ngo II*, ¶¶ 6-11, 946 A.2d at 427-30. The effect of the Law Court's holdings in Ngo I and Ngo II is that the Maine Rules of Criminal Procedure do not provide a post conviction procedural avenue for a non-citizen facing deportation as a collateral consequence of their criminal conviction.

Truong's situation is similar to the situation Ngo faced. If Truong has a constitutional right to challenge his conviction based on the holding in *Padilla*, this court expresses no opinion as to whether Truong should pursue his claim pursuant to M.R. Crim. P. 1 or pursuant to the post-conviction relief statute.

6

Regardless of which procedural avenue is appropriate, the two-prong inquiry described in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), for ineffective assistance of counsel claims is still required. *See Padilla*, 130 S. Ct. at 1482 (applying *Strickland's* two prong test to determine if Padilla's representation was constitutionally deficient).[6] Before the court can consider the substance of Truong's claim based on *Strickland*, the court addresses whether the holding of *Padilla* applies retroactively.

## 2. Does the holding of *Padilla* Apply Retroactively to Truong's Motion?

In *Padilla* the United States Supreme Court decided whether the representation of a criminal defense attorney was constitutionally deficient as a result of his failure to inform his client, Padilla, whether his plea carried a risk of deportation. Padilla was a native of Honduras, and was a lawful permanent resident of the United States. *Padilla*, 130 S. Ct. at 1477. He was charged with trafficking a large amount of marijuana, a deportable offense, and he faced deportation. *Id.* Padilla claimed in his post-conviction proceeding that his attorney failed to advise him of the consequences of pleading guilty to the charge, and also claimed that his attorney told him that he "did not have to worry about immigration status since he had been in the country so long." *Padilla*, 130 S. Ct. at 1478. Padilla alleged that he would not have pled guilty and would have gone to trial had he not received incorrect advice from his attorney. *Id.* The Kentucky Supreme Court denied post-conviction relief on the pleadings without an evidentiary hearing. *Id.* The Supreme Court granted certiorari to

---

[6] Under *Strickland*, a petitioner claiming he was denied effective assistance of counsel must prove: (1) that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688; and (2) "but for the counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

decide if Padilla's attorney had an obligation under the Sixth Amendment to advise Padilla of the deportation consequences of pleading guilty to the offense he was charged with. *Id.* The Court affirmatively answered the question and held that under the Sixth Amendment competent counsel must inform a non-citizen criminal defendant whether his plea carries a risk of deportation. *Padilla*, 130 S. Ct. at 1486.

The Court's decision was in part guided by Congress' 1996 changes to the Immigration and Nationality Act, which eliminated the Attorney General's authority to grant discretionary relief from deportation. *Padilla*, 130 S. Ct. at 1480 citing to 110 Stat. 3009-596. The Attorney General's discretion was available through Section 212(c)[7] of the Immigration and Nationality Act, but that section was repealed by Congress' 1996 changes.[8] The Court noted that the changes to the immigration laws have "dramatically raised the stakes of a non-citizen's criminal conviction" because "if a non-citizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable . . . ." *Padilla*, 130 S. Ct. at 1480. The 1996 changes repealing the Attorney General's authority under Section 212(c) were passed on September

---

[7] Section 212(c), codified at 8 U.S.C. § 1182(c), stated:
> "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . ."

*INS v. St. Cyr*, 533 U.S. 289, 295 (2001).

[8] Congress made these changes through the enactment of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, which was passed as part of the Omnibus Consolidated Appropriations Act. 104 Pub. L. No. 208, § 240B; 110 Stat. 3009-597 (Sept. 30, 1996).

30, 1996, and went into effect in April 1997 after Truong's conviction. *INS v. St. Cyr*, 533 U.S. 289, 315, 121 S. Ct. 2271, 2281 (2001).[9]

The starting point for any retroactivity analysis is *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989). The United States Supreme Court stated "the question of whether a decision announcing a new rule should be given prospective or retroactive effect should be faced at the time of that decision." *Teague*, 489 U.S. at 300, 109 S. Ct. at 1070 (internal quotations and citation omitted). The Court did not clearly state whether its holding in *Padilla* applies retroactively. The Court's analysis in *Padilla* suggests that the Court may have intended for its holding in *Padilla* to apply retroactively to some petitioners. In addressing concerns that the holding of *Padilla* would disrupt the finality of convictions obtained through guilty pleas, the Court wrote:

> It seems unlikely that our decision today will have a significant effect on those convictions already obtained as a result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on deportation consequences of a client's plea. We should, therefore presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty.

*Padilla*, 130 S. Ct. at 1485 (internal citations omitted).

It is not clear how the Court concluded that the "professional norm" has existed for at least 15 years prior to its decision in 2010. It is possible that the Court was referring to Congress' 1996 immigration law changes, which went into

[9] Therefore, it appears that Truong would be eligible for relief pursuant to Section 212(c) of the Immigration and Nationality Act. In *INS v. St. Cyr*, the Supreme Court concluded that relief pursuant to Section 212(c) remained available to an alien who was convicted pursuant to a plea agreement and was eligible for relief pursuant to Section 212(c) at the time of his plea, because nothing in the Immigration Reform and Immigrant Responsibility Act of 1996 indicated that the repeal of Section 212(c) applied retroactively. *INS v. St. Cyr*, 533 U.S. 289, 326, 121 S. Ct. 2271, 2293.

effect in April 1997, although the dates do not precisely align. It is more likely that the court arrived at 15 years by referring to practitioner's guides to define the reasonable measure of attorney performance for its analysis under *Strickland*. *Padilla*, 130 S. Ct. at 1482. After surveying several practitioner's guides and publications, the Court concluded that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id*. However, only two of the guides cited in *Padilla* pre-date Truong's plea – one source from 1995[10] was published by the National Legal Aid and Defender Association, and the other is from 1993[11] and was published by the American Bar Association.[12]

The issue of retroactivity requires the court to reconcile competing policies. On one hand, justice requires that rulings that implicate constitutional rights should be applied equally to all similarly situated defendants. On the

---

[10] National Legal Aid and Defender Assn., Performance Guidelines for Criminal Representation § 6.2 (1995). The court is unable to find a copy of this publication from 1995.

[11] ABA Standards for Criminal Justice, Prosecution Function and Defense Function 4-5.1(a), p. 197 (3d ed. 1993).
Standard 4-5.1(a) provides:

> (a) After informing himself or herself fully on the facts and the law, defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.

Available at http://www.abanet.org/crimjust/standards/prosecutionfunction.pdf.
This source does not specifically state that a defense attorney should consider the immigration consequences of a plea.

[12] This court acknowledges that in 2001 in *INS v. St. Cyr*, the Supreme Court supported its dicta that generally alien defendants consider the immigration consequences of their convictions, by citing to the 1982 ABA Standards for Criminal Justice. That publication provides that, if a defendant will face deportation as a result of a conviction, defense counsel "should fully advise the defendant of these consequences." *INS v. St. Cyr*, 533 U.S. at 322 n. 48 citing to ABA Standards for Criminal Justice, 14-3.2 Comment, 75 (2d ed. 1982). As discussed below, it is not until *Padilla* that the Court turns the ABA's recommendation into a constitutional standard.

other hand, the "[a]pplication of constitutional rules not in existence at the time a conviction becomes final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Teague*, 489 U.S. at 309, 109 S. Ct. at 1074.

Whether *Padilla* applies retroactively depends on whether *Padilla's* holding created a new constitutional rule, or instead merely applied a well-settled rule to a particular set of facts. In *Teague v. Lane*, the Supreme Court adopted Justice Harlan's belief that new constitutional rules for criminal cases generally should not be applied retroactively on collateral attack. *Teague v. Lane*, 489 U.S. at 304, 109 S. Ct. at 1072. The Court held that for cases on collateral review, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," unless the new rule falls into one of two exceptions. *Teague v. Lane*, 489 U.S. at 310, 109 S. Ct. at 1075.

> A case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. ... To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.

*Teague*, 489 U.S. at 301, 109 S. Ct. at 1060. There are two narrow exceptions to the Court's holding in *Teague*. New constitutional rules are applied retroactively if: (1) the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe;" or (2) the new rule alters a bedrock rule of criminal procedure implicit in the concept of ordered liberty. *Teague*, 489 U.S. at 311, 109 S. Ct. at 1075-76.

Courts across the country are split as to whether *Padilla* applies retroactively. Some courts have held that *Padilla* did not announce a new rule of

law and that Padilla applies retroactively.  *See People v. Bennett*, 2010 N.Y. Misc. LEXIS 1144 (N.Y. Crim. Ct. Bronx Cty., May 26, 2010) (stating that "*Padilla* did not announce a new constitutional rule, but merely applied the well-settled rule in *Strickland* to a particular set of facts."), *see also U.S. v. Hubenig*, 2010 WL 2650625 *5-*8 (E.D. Cal., 2010) (holding that *Padilla* did not announce a new rule on the ground that "specific applications of *Strickland* do not generally establish a new rule.").  Other courts have held that *Padilla* does not apply retroactively because it does announce a new rule of law.  *See People v. Kabre*, 2010 NY Slip Op 20291, *4, 2010 N.Y. Misc. LEXIS 3275, **7 (N.Y. Crim. Ct. New York Cty., July 22, 2010) (holding that *Padilla* announced a new constitutional rule of criminal procedure and disagreeing with the holdings in *Bennett* and *Hubenig*), *Haddad v. United States*, 200 U.S. Dist. LEXIS 72799, *16 (E.D. MI, 2010) (stating that "it is unlikely that *Padilla* will be made retroactive to convictions under collateral attack."), *see also Gacko v. United States*, 2010 U.S. Dist. LEXIS 50617, *6 (E.D.N.Y., May 20, 2010) (stating that *Padilla* is not "a 'newly recognized' right that was made retroactively applicable to cases on collateral review.").

After considering the above precedents and the standards announced in *Teague*, this court concludes that *Padilla* announced a new rule of law that is not applied retroactively.  First, while the Supreme Court used the framework of *Strickland* to analyze Padilla's claim, the Court's decision was not dictated by binding legal precedent that existed at the time Padilla's conviction became final – it was based on an after the fact assessment of practitioner's guides from professional organizations. Second, the court's holding imposes a significant new obligation on the States and the Federal government – if *Padilla* was not considered a new rule of law it would open the floodgates of collateral attack

12

and would disrupt the finality of criminal convictions, even convictions in which the sentence has been served such as Truong's.

Third, the Court's holding in *Padilla* breaks new ground in terms of the scope of representation required for constitutional representation under the Sixth Amendment: Prior to its 2010 decision in *Padilla*, the Supreme Court has never held that defense counsel in a criminal case had any particular responsibility to advise an alien defendant of the potential consequences of a conviction under the immigration laws. *Kabre*, at *5. Indeed, every federal circuit court of appeal to consider the issue has held "that defense counsel was not ineffective for failing to advise [the defendant] about deportation or any other potential immigration consequence of a criminal conviction." *See Kabre* at *5 citing *U.S. v. Gonzalez*, 202 F.3d 20 (1st Cir. 2000), *U.S. v. Santelises*, 476 F.2d 787 (2d Cir. 1973), *U.S. v. DelRosario*, 902 F.2d 55 (D.C. Cir. 1990), *U.S. v. Yearwood*, 863 F.2d 6 (4th Cir. 1988), *U.S. v. Banda*, 1 F.3d 354 (5th Cir. 1993), *U.S. v. George*, 869 F.2d 333 (7th Cir. 1989), *U.S. v. Fry*, 322 F.3d 1198 (9th Cir. 2000), *Bromes v. Ashcroft*, 358 F.3d 1251 (10th Cir. 2004), *U.S. v. Campbell*, 778 F.2d 764 (11th Cir. 1985). The import of the Court's ruling in *Padilla* is that defense attorneys are now required to have a firm understanding of immigration law.

The new rule of law announced in *Padilla* does not fit within either of the exceptions triggering retroactivity described in *Teague*. The first exception does not apply because Padilla's case did not entail constitutionally protected individual conduct. *Teague*, 489 U.S. at 307, 109 S. Ct. at 1073 citing *Mackey v. United States*, 401 U.S. 667, 693, 91 S. Ct. 1160 (1971). The second exception does not apply as well because *Padilla* is not a criminal procedure holding that implicates changes based on our understanding of ordered liberty. The Supreme

13

Court has long held that deportation is a civil procedure rather than a criminal sanction. *Ngo II*, ¶ 10, 946 A.2d at 428 citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050-51, 104 S. Ct. 3479 (1984) (where the Court held that an admission of alien status made during an unlawful arrest is not suppressed in a civil deportation proceeding under the exclusionary rule).

Even if *Padilla* does apply retroactively, the law suggests that *Padilla's* reach does not extend to Truong. Truong entered into his plea agreement on October 10, 1996 – a date that is at the outer limit of the 15-year time frame contemplated by the Supreme Court. He pled guilty to his convictions before the 1996 immigration law changes went into effect, and only two of the practitioner's guides the Court relied upon pre-date Truong's plea. To hold that in 1996 Truong's representation was constitutionally deficient on the ground that one of two cited practitioner's guides may have advised defense attorneys to consider the immigration consequences of a plea would be absurd, especially when the other practitioner's guide does not specifically mention immigration. *See supra* nn. 10 and 11.

### 3. *Strickland v. Washington*

Even if *Padilla's* holding applied to Truong, such that Truong's attorney was constitutionally required to advise Truong of the immigration consequences of his plea, this court would deny Truong's motion because it fails under the second prong of the two-part test in *Strickland*. Under *Strickland*, a petitioner claiming he was denied effective assistance of counsel must prove: (1) that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688; and (2) "but for the counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Unlike *Padilla*, this court

14

rules on Truong's motion after an evidentiary hearing. Aside from the arguments of Truong's present attorney, Truong has not provided any evidence or testimony that suggests that "but for the counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

Therefore the entry is:

  Truong's motion to vacate his convictions is denied.

Dated at Portland, Maine this ___30th___ day of ___July___, 2010.

             Robert E. Crowley
             Justice, Superior Court