IKUTA, Circuit Judge,
dissenting:
As the Supreme Court made clear, “a case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final. And a holding is not so dictated ... unless it would have been apparent to all reasonable jurists.” Chaidez v. United States, — U.S. -, 133 S.Ct. 1103, 1107, 185 L.Ed.2d 149 (2013) (quoting Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and Lambrix v. Singletary, 520 U.S. 518, 527-28, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)) (internal quotation marks and citation omitted). Relying on our precedents and those of other circuits, we held in 2003 that counsel’s failure to advise a defendant of collateral immigration consequences of a criminal conviction did not violate the Sixth Amendment. See United States v. Fry, 322 F.3d 1198, 1200 (9th Cir.2003), abrogated by Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). As indicated in Chaidez, reasonable jurists would have interpreted that rule to mean that Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), was simply not “operative” and did not apply “when a criminal lawyer gives (or fails to give) advice about immigration consequences.” Chaidez, 133 S.Ct. at 1110. In 2005, we made an exception to this general rule, and held that Strickland does apply to a lawyer’s affirmative misadvice about immigration consequences. United States v. Kwan, 407 F.3d 1005, 1015 (9th Cir.2005), abrogated in part by Padilla, 559 U.S. 356, 130 S.Ct. 1473. Because this exception was not dictated by precedent, Kwan established a new rule. In order to reach the opposite conclusion, the majority adopts the reasoning of the dissent in Chaidez. Maj. Op. at 1155-57, 1157-58. Because I think we should follow the Supreme Court’s majority, not the dissenters, I decline to go along.
I
Before pleading guilty to three counts of perjury in 2000, Maureen Chan asked her attorney about the immigration consequences of her plea. According to Chan, the attorney told her that there would be no adverse immigration consequences. In 2012, the Department of Homeland Security initiated removal proceedings against Chan, charging her as being inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude. Chan brought a petition for writ of error coram nobis, seeking to withdraw her guilty plea on the ground that her counsel in 2000 gave her ineffective assistance by misadvising her of the immigration consequences of her plea. She claims that the exception stated in Kwan applies retroactively to her conviction in 2000.
If Kwan created a new rule, it cannot be applied retroactively to cases on collateral review. See Teague, 489 U.S. at 307, 310, 109 S.Ct. 1060. Our reasoning in Fry indicates that our pre-Kwan precedent did *1161 not dictate the result in Kwan, and such a result would not have been apparent to all reasonable jurists at the time of Chan’s conviction. See Chaidez, 133 S.Ct. at 1107. In Fry, we considered whether a habeas petitioner’s claim that his Sixth Amendment right to effective assistance of counsel was violated when his counsel failed to inform him that he could be deported if convicted. 322 F.3d at 1199-1200. Fry pointed to our long-standing precedent that “deportation is a collateral, not direct, consequence of the criminal process,” id. at 1200 (citing Fruchtman v. Kenton, 531 F.2d 946, 949 (9th Cir.1976)), and that failure to advise a defendant of collateral consequences is not ineffective assistance of counsel, id. (citing Torrey v. Estelle, 842 F.2d 234, 237 (9th Cir.1988)). Citing cases from the First, Second, Fifth, Fourth, Seventh, Tenth, Eleventh and D.C. Circuits, Fry also noted that “[a]ll other circuits to address the question have concluded that deportation is a collateral consequence of the criminal process and hence the failure to advise does not amount to ineffective assistance of counsel.” Id. (internal quotation marks omitted). Fry concluded, consistent with both Ninth Circuit precedent and our sister circuits, “that counsel’s failure to advise a defendant of collateral immigration consequences of the criminal process does not violate the Sixth Amendment right to effective assistance of counsel.” Id. Fry did not suggest there was any distinction between lack of advice about deportation and misadvice about deportation. Nor would it have been apparent to all reasonable jurists that we intended such a distinction, given the general principle (subsequently spelled out by the Supreme Court) that “there is no relevant difference between an act of commission and an act of omission” for purposes of ineffective assistance of counsel, and thus a lawyer’s advice includes a lawyer’s “affirmative misadvice.” Padilla, 559 U.S. at 370, 130 S.Ct. 1473.
By concluding that the petitioner could not raise an ineffective assistance of counsel claim because deportation is a collateral consequence of the criminal process, Fry effectively recognized, in keeping with our sister circuits, that “advice about matters like deportation, which are ‘not a part of or enmeshed in the criminal proceeding,’ does not fall within the [Sixth] Amendment’s scope.” Chaidez, 133 S.Ct. at 1109 (quoting United States v. George, 869 F.2d 333, 337 (7th Cir.1989)). This conclusion derives from the more general principle that if a defendant has no constitutional right to effective assistance of counsel with respect to a collateral matter, an attorney’s error with respect to such a matter could not violate the defendant’s Sixth Amendment right. Cf. Coleman v. Thompson, 501 U.S. 722, 752-53, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (where there is no constitutional right to counsel, there is no deprivation of effective assistance regardless whether the attorney makes a serious error in representing the client). Accordingly, before Kwan was decided, a reasonable jurist could conclude that an attorney’s “advice about collateral matters” was “excluded ... from the Sixth Amendment’s ambit,” and therefore Strickland did not apply “when a criminal lawyer gives (or fails to give) advice about immigration consequences.” Chaidez, 133 S.Ct. at 1110. Indeed, nothing in our case law would have precluded us from reaching such a conclusion.
We decided to take a different approach. In 2005, Kwan distinguished Fry and held for the first time that Strickland applied to an affirmative misrepresentation regarding immigration consequences. See Kwan, 407 F.3d at 1015 (citing United States v. Couto, 311 F.3d 179, 187-88 (2d Cir.2002)). While other circuits had reached this conclusion as well, no Ninth Circuit case had previously adopted this exception to the collateral consequences rule.
*1162 Did Kwan announce a new rule? Chaidez strongly indicates it did so. As explained in Chaidez, making an exception to the collateral consequences rule that advice regarding deportation is “ ‘categorically removed’ from the scope of the Sixth Amendment right to counsel,” 133 S.Ct. at 1108, requires a court to breach “the previously [fissure]-free wall between direct and collateral consequences” and establish that Strickland did apply to claims of ineffective assistance of counsel relating to deportation matters, id. at 1110. Such a breach in the wall between direct and collateral consequences constitutes “ ‘breaking new ground’ or ‘imposing a new obligation,’ ” and therefore creates a new rule that is not retroactively applicable. Id. (alterations omitted). In reaching this conclusion, Chaidez rejected the defendant’s argument that a breach in the wall between direct and collateral consequences (made by Padilla) did not constitute a new rule because it “did no more than apply Strickland to a new set of facts.” Id. at 1111. Rather, the Court explained, before considering -the applicability of Strickland, Padilla had to determine “whether Strickland applied at all.” Id. at 1110.
We should reach the same conclusion here. Because we adopted the collateral consequences rule based on our longstanding precedent, see Fry, 322 F.3d at 1200, a jurist could reasonably conclude that Strickland didn’t apply at all to “a lawyer’s advice (or non-advice) about a plea’s deportation risk,” Chaidez, 133 S.Ct. at 1110. Two years later, Kwan created a “separate rule,” id. at 1112, by distinguishing Fry and holding that the Sixth Amendment applied to affirmative misad-vice by counsel regarding the collateral matter of deportation, see Kwan, 407 F.3d at 1015-17. As explained in Chaidez, such a rule had to first breach “the previously [fissure]-free wall between direct and collateral consequences” and establish that Strickland applied to collateral deportation matters, when the attorney gives affirmative misadvice. Chaidez, 133 S.Ct. at 1110. Kwan’s exception was not dictated by Strickland, because Kwan first had to reach the conclusion that “Strickland applied at all.” Id. Accordingly, we should conclude that Kwan was not the mere application of Strickland, but rather created a new rule that is not retroactively applicable. See Teague, 489 U.S. 288, 109 S.Ct. 1060.
II
The majority’s arguments regarding why Kwan did not create a new rule are not persuasive. Like the defendant in Chaidez, Chan and the majority here argue that Kwan was a simple application of Strickland. Maj. Op. at 1156. But this is the very argument rejected by Chaidez. Indeed, in concluding that Kwan was just an application of Strickland, the majority is forced to rely on the language of Chai-dez ’s dissent. Maj. Op. at 1157-58 (quoting Chaidez, 133 S.Ct. at 1119 (Sotomayor, J., dissenting)) {“Kwan merely asserted an ‘age-old principle’ that attorneys can be held liable if they affirmatively misadvise their clients.”).
Second, the majority argues that Kwan’s rule is not new because it can be retrospectively supported by Strickland. Maj. Op. at 1156. Of course at some level of generality even a new rule can be justified by reference to prior case law. See, e.g., Saffle v. Parks, 494 U.S. 484, 489-90, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (concluding that extending the reasoning of two prior cases resulted in the creation of a new rule). But the correct inquiry is whether the Kwan rule was dictated by our precedent, see Teague, 489 U.S. at 301, 109 S.Ct. 1060, and the majority cites no Ninth Circuit cases that would suggest that all reasonable jurists at the time of Chan’s conviction would predict the an- *1163 nouneement of a rule that affirmative mis-adviee about immigration consequences would be exempt from the firm barrier that existed between direct and collateral consequences. See Chaidez, 133 S.Ct. at 1110. Rather, a jurist could have reasonably concluded that an attorney’s error with respect to collateral immigration matters was simply outside the scope of the Sixth Amendment.
Finally, the majority defends its position that Kwan did not create a new rule by pointing to the other circuits and out-of-circuit district courts that had adopted a similar exception for affirmative misrepresentations prior to Kwan. Maj. Op. at 1157-58. But Chaidez made clear that the fact that “a minority of courts recognized a separate rule for material misrepresentations,” Chaidez, 133 S.Ct. at 1112, was insufficient to establish that all reasonable jurists would have concluded that the Sixth Amendment applied to the collateral consequence of deportation, id. In other words, the existence of these out-of-circuit decisions does not establish that all reasonable Ninth Circuit judges, “prior to [Kwan], thought they were living in a [Kwan Hike world.” Id. As noted above, we had adopted the collateral consequences rule, see Fry, 322 F.3d at 1200-01, and made no mention of the separate material misrepresentation rule later adopted in Kwan. More to the point, Chaidez indicates that the exception to the collateral consequences rule that Kwan ultimately adopted constituted a “separate rule,” not simply an application of Strickland. 133 S.Ct. at 1112.
III
The concurrence similarly misses the mark in concluding that when a court announces a rule in the course of deciding a coram nobis petition, that rule is binding on all subsequent coram nobis petitions. This argument is in tension with our case law, which properly adheres to Teague. Thus in Ortega v. Roe, rather than apply a rule announced in a prior habeas case without considering whether that rule existed at the time Ortega’s conviction became final, we instead considered whether the rule was in fact “new,” as defined by Teague. See 160 F.3d 534, 536 (9th Cir.1998), vacated on other grounds by Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). This same approach would apply in coram nobis proceedings, because in determining whether a rule applies retroactively, we do not distinguish between habeas and coram nobis. See United States v. McClelland, 941 F.2d 999, 1002 (9th Cir.1991); United States v. Walgren, 885 F.2d. 1417, 1421 (9th Cir.1989).
Finally, the concurrence’s argument that any rule announced in the course of deciding a coram nobis petition must be applied to subsequent coram nobis cases is contrary to Teague, which made clear that a new rule may be applied retroactively to cases on collateral review only “if it places ‘certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,’ ” or “if it requires the observance of ‘those procedures that ... are implicit in the concept of ordered liberty.’ ” 489 U.S. at 307, 310, 109 S.Ct. 1060, quoting Mackey v. United States, 401 U.S. 667, 692-93, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring). Not all new rules in co-ram nobis cases will pass such a high bar, and the rule announced in Kwan does not come close. Of course, the question whether a rule announced in a federal habeas or coram nobis proceeding is a “new rule” should seldom arise, since the Supreme Court has banned using habeas corpus (and by extension, other collateral proceedings such as coram nobis) to create new constitutional rules of criminal procedure unless the rules meet the two exceptions described in Teague. See 489 U.S. at *1164 316, 109 S.Ct. 1060. But as explained above, Chaidez requires us to conclude that the rule announced in Kwan was a new rule, and therefore we must comply; with Teague in considering whether it is applicable here.
IV
Although Chan’s case is sympathetic, the result in Kwan “was not dictated by precedent existing at the time [Chan’s] conviction became, final” and would not “have been apparent to all reasonable jurists.” Chaidez, 133 S.Ct. at 1107 (internal quotation marks omitted). As such, Kwan created a new rule and cannot be applied retroactively to Chan’s case. See Teague, 489 ILS. at 301, 310, 109 S.Ct. 1060. I would affirm the district court.